# OCTOBER TERM, 1927.

### GOWDY *v.* GORDON.

1. ADVERSE POSSESSION—PRESCRIPTIVE RIGHTS OF GRANTOR TO ADJACENT PROPERTY DO NOT PASS TO GRANTEE UNLESS CONVEYED.
   Grantor's prescriptive rights, if any, to property other than that deeded, though adjacent, does not inure to grantee's benefit.

2. DEEDS—RIGHTS NOT POSSESSED NOT CONVEYED.
   Grantor cannot convey any rights which he does not possess.

3. APPEAL AND ERROR—BOUNDARIES—PARTY NOT APPEALING MAY NOT HAVE DECREE MODIFIED IN HIS FAVOR.
   Where, in a suit to quiet title, the decree of the court below fixed the boundary line, from which plaintiffs did not appeal, they are not entitled to have it rectified, on appeal, even if it is more favorable to defendants than the proofs warrant.

Appeal from Berrien; White (Charles E.), J. Submitted January 7, 1927. (Docket No. 43.) Decided October 26, 1927.

Bill by Herbert W. Gowdy and another against Louis E. Gordon and others to quiet title to land. From a decree for plaintiffs, defendants Gordon appeal. Affirmed.

*Gore & Harvey,* for plaintiffs.

*Stuart B. White,* for appellants.

SHARPE, C. J. This suit was brought to quiet title to a tract of land bordering on Lake Michigan mostly

[1]Adverse Possession, 2 C. J. § 105 (Anno); [2]Deeds, 18 C. J. § 37; [3]Appeal and Error, 4 C. J. § 2599.

in section 36, but including a small triangular lake shore parcel in section 35, town 7 south, range 21 west, New Buffalo township, in the southwest corner of Berrien county, Michigan. Personal service was made upon some defendants, and others who could not be personally served were brought in by statutory substituted service. Some of the defendants failed to appear and *pro confesso* decree was entered as to them. So far as disclosed by this record, the only defendants who answered issuably and contested the case were defendants and appellants Louis E. Gordon and his wife, Lena, who were included as defendants because they had made claim to the small triangular parcel in section 35 and an easement over a claimed road constructed by their grantor and used by him and themselves to reach the lake shore. A decree quieting title as prayed was granted plaintiffs, and defendants Gordon have appealed.

Town 7 south, range 21 west, is but a small fractional township, containing parts of only two or three sections in its southeast corner. The remaining sections of the township, if outlined, would extend beyond the meander line into Lake Michigan. The triangular parcel in controversy here consists of but a fraction of an acre. The northwesterly side of this triangle extends apparently 300 feet, more or less, northeast and southwest along the lake shore to the section line between sections 35 and 36 which is its north apex, its east side being the east line of section 35. Its essential value is as lake frontage for lands lying back of and adjoining it, which its diagonal shore line might suggest, if oriented at right angles to the lake shore, were partly in both sections 35 and 36. Along the frontage the lake shore is a sandy beach, slightly rising from the water's edge for 100 feet or more to an abrupt bluff, said to rise about 50 feet to a higher level of back land, which parallels the lake shore in its general course.

Plaintiffs and defendants Gordon both own land in the northwest quarter of section 36 bounded directly on the west by the west line of said section. The Gordon property, consisting of about 41 acres, is directly north of the Gowdy place and is bounded on the northwest by Lake Michigan with a waterfront of several hundred feet, its direct north boundary being the north line of section 36, now called "Town Line avenue." The Gowdy property in that section all lies back or east of the bluff and has no waterfront.

The early settlers in that locality confined their activities to lands lying back of the bluff, between it and a public highway lying further to the east, called the "Lake Shore road," apparently adjusting their views and development out of line with the government lines of the property, in the particular that they ranged northwest and southeast nearer at right angles with the public highway to the east and the lake front to the west.

Ira Smith was an early settler in that locality and acquired considerable land there. He located his home in section 36 on what is now the Gowdy property, some distance west from the public highway, and early laid out a private road through his own land convenient to his place, known as the "Ira Smith private road." This private road terminated east of the top of the bluff somewhere near the north and south government line between sections 35 and 36. Its general direction towards the lake is 71° 25' west. It apparently terminated near the southeastern apex of the triangle in controversy.

The Gowdys and Gordons trace title to their lands in section 36 back to Ira Smith as their common grantor. The Smiths, Gowdys, and one Wood, who long owned and sold to the Gordons their land in section 36, were neighbors for many years in that locality. All parties used the Ira Smith private road in common.

It marks the line between plaintiffs' and defendant Gordons' holdings in section 36 and the latter's easement to its use is undisputed. The lake shore front was difficult of access because of the bluff and cut little, if any, figure in the economy of early activities in that locality. It remained in its natural condition uninclosed and unimproved, though the shore was visited from time to time as parties desired for bathing, fishing, picnicking, or any other purpose. Ira Smith at one time built a stairway down the bluff to make the shore front more accessible.

Plaintiff H. W. Gowdy testified he had known that bluff 40 years; that after he purchased his place in section 36 he located the west line of that section and set a cement marker on it near the end of the Ira Smith private road in 1909; that he later became desirous of securing some water front and negotiated with members of the M. O. Smith family, who owned a tract of water front land on the opposite side of the line in section 35, and contracted with the M. O. Smith heirs for it, with the full knowledge of Wood, some time before the latter sold his place to the Gordons, but owing to death in that family and other obstacles he did not get his deed for it until 1924. His deed includes the triangular piece in controversy here. In the meantime lake shore property for resort purposes became valuable, and defendant Louis Gordon purchased his holdings in section 36 from the Woods, who had resided upon it for many years, and proceeded to plat it for resort purposes, calling the subdivision "Gordon's Beach." His surveyor in running the lines for platting it found that this small triangular piece in the northeast corner of section 35 interfered with platting lots at right angles to the lake front on the Gordon property in section 36 for between 100 and 200 feet northeast of the west section line of 36. Gordon claimed to own this triangular piece, but, so

240—Mich.—36.

far as the map before us shows, did not extend any of his right-angle lines towards the lake into or through it.    He recorded his plat and sold some $16,000 worth of lots, most if not all up the. shore from this claimed interference.    Upon some of those lots cottages were built and a resort established.    His claim to this triangle in section 35 and right of way to the beach over it are the only questions before us in this appeal.    The lands owned by these parties in section 36 and the right of each to use the Ira Smith private road to where he terminated it, at the west side of his property, near the west line of section 36 and the top of the bluff, are not in dispute.    The triangular parcel in question here belonged to another Smith (Marvin O.), from whose heirs plaintiff later bought it.

When the case came on for hearing in the trial court plaintiffs' counsel in his opening first said to the court in the presence of opposing counsel:

"It is stipulated by and between the counsel for the respective parties that defendants, Louis Gordon and Lena Gordon—the Gordons have no record title to any portion of section 35, and make no claim to record title to any portion of section 35, New Buffalo township."

After the case for plaintiffs was well under way, the court addressed defendants' counsel, and the following was said:

"*The Court:* Do the defendants claim title to any of the land, or claim an easement to the lake?

"*Mr. S.* (defendants' counsel) :  We claim a right there by adverse user.

"*The Court:* Right of easement?

"*Mr. S.:* Oh, no.   That we claim to have been occupying that land.    It is our claim that at the time that this Ira Smith road was made that it was under the belief that the whole thereof was in section 36.    I think that is what our answer puts it.    We were laboring under that belief at that time.

"*The Court:* The whole of the triangle?

"*Mr. S.:* The whole of the triangle in 36.    And that we have been occupying and our predecessors, ever since the road was laid out, thinking and believing we owned it.

"*Mr. G.* (plaintiffs' counsel) : It is our claim in that regard that it was put there by consent of the owner, and there has never been any adverse user."

Later during the hearing, while the defense was in progress, the following occurred:

"*The Court:* I would like to hear from you, Mr. S., what rights you claim under your deed, first?

"*Mr. S.:* It is my contention that at the time those deeds—original deeds were given, Ira Smith was under the impression that this road—the southern terminus of this road—western terminus of this road was' entirely on his land.   That is to say, that no part of section 35 'extended, he didn't realize, nor did Mr. Newton Smith—

"*The Court* (interrupting) : Supposing that is so, the question to you is, just what land did your clients acquire by their deed?

"*Mr. S.:* They acquired that much land in section 36, wherever that may be.

"*The Court:* Then you are limited to that, are you not?    You cannot benefit by possession of somebody else, unless you got deed to it.   ·

"*Mr. S.:* We acquire that by adverse possession.

"*The Court:* No.   What did Wood deed to you?

"*Mr. S.:* He deeded the same as he got.

"*The Court:* He didn't deed any land included in that triangle.

"*Mr. S.:* That is true.

"*The Court:* If that be true, then you cannot benefit by any adverse possession of anybody but yourself. You cannot tack their possession on to your possession unless they conveyed it to you.    That is fundamental in this State.    You have not had it but two or three years, and you cannot claim any adverse rights. Assuming that Mr. Wood owned it, you did not acquire that title by your deed."

This statement of the law as applied to the facts so admitted, and otherwise shown, as we conclude, can-

not be questioned. The court correctly stated defendants only obtained title to what was deeded to them and if their grantor had any prescriptive right to other property, though adjacent, it could not inure to their benefit.

Counsel for defendants contends in his briefs filed in this court that those concessions ought not to be taken literally, in view of a provision in the deed from Ira Smith in their chain of title, given in 1868, stating that it—

"Conveys com. in center of road 12 rods N. of S. E. corner of N. W. quarter of N. W. quarter of section 36, twp. 7 S., R. 21 W., thence N. 75½ degrees W. in center of road to the lake shore and to include all the land in W. half of N. W. quarter section 36 lying N. of private road of Ira Smith, except the right of way to use said road in common with myself and others."

That deed, though put in evidence, is not printed in the record, but Ira Smith could not convey any rights he did not possess. His private road and rights, so far as shown, ended at the west line of section 36. We cannot construe that excerpt otherwise than did defendants' counsel in admitting to the trial court that "They acquired that much land in section 36, wherever that may be," and Ira Smith "didn't deed any land included in that triangle." If the question of adverse possession were properly before us, the testimony is convincing that neither° these defendants nor their predecessors in their chain of title ever maintained such open, exclusive, adverse, and hostile possession of this triangular piece of open, unimproved, and apparently vacant land as would attach to them any rights by prescription.

At close of the hearing, defendants' counsel moved for dismissal of plaintiffs' bill of complaint on various grounds, and apparently inferring the court was otherwise inclined, further requested that if no prescriptive

rights in defendants to the triangle were found, the court would determine, or locate, the northwest boundary line of the triangle along the water front, as we understand it outlined in the request.   In the final decree the court determined the water front line as the average low-water mark during the previous 20 years at a point 2,210 feet north of the east quarter post of section 35, being elevation 579.6 feet above sea level, and authorized a permanent monument to be set on said section line so indicated.   It is claimed for plaintiffs, though only admitted by defendants as to form, that the decree was by consent of parties. Counsel were heard upon that question in open court, but the record does not contain what transpired.   The court was requested to determine the water line of the triangle by defendants' counsel, and did so. Plaintiffs protest that the decree is more favorable to defendants in that particular than the proofs warrant, but concede that, as they did not appeal, it cannot be rectified in their favor.   The record does not warrant its modification in defendants' favor.

The decree will stand affirmed, with costs to plaintiffs.

FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.   BIRD, J., did not sit.

The late Justice SNOW and Justice STEERE took no part in this decision.