*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

RICHARD GUNTHER, COURTENAY KONET, and WILLIAM E. MARCUS, Individually and as Trustee of WILLIAM E. MARCUS TRUST,

        Plaintiffs/Counterdefendants-
        Appellants/Cross-Appellees,

v

CHAD APAP,

        Defendant-Appellee/Cross-Appellant,

and

MICHAEL K. STREHL, CASEY J. AMBROSE, CHRISTY BROWN-AMBROSE, also known as CHRISTY M. BROWN, also known as CHRISTY M. AMBROSE, and DIANA MAHACEK,

        Defendants/Counterplaintiffs-
        Appellees/Cross-Appellants.

UNPUBLISHED
April 28, 2022

No. 354908
Oakland Circuit Court
LC No. 2015-150606-CZ

RICHARD GUNTHER, COURTENAY KONET, and WILLIAM E. MARCUS, Individually and as Trustee of WILLIAM E. MARCUS TRUST,

        Plaintiffs/Counterdefendants-
        Appellees/Cross-Appellants,

v

CHAD APAP,

        Defendant-Appellant/Cross-Appellee,

and

No. 355248
Oakland Circuit Court
LC No. 2015-150606-CZ

-1-

MICHAEL K. STREHL, CASEY J. AMBROSE,
CHRISTY BROWN-AMBROSE, also known as
CHRISTY M. BROWN, also known as CHRISTY
M. AMBROSE, and DIANA MAHACEK,

> Defendants/Counterplaintiffs-
> Appellants/Cross-Appellees.

Before:  LETICA, P.J., and REDFORD  and RICK, JJ.

PER CURIAM.

In these consolidated appeals,[1] following a bench trial, property owners appeal the trial court's opinion and order of judgment which determined that the parties did not own a 9-foot strip of land used as a pathway by back lot property owners to access the lake, but that plaintiffs and not defendants held riparian rights[2] to Walled Lake.[3]  Plaintiffs, who own neighboring lakefront properties, sought to prevent defendants, back lot property owners, from maintaining a fence along the 9-foot pathway to the lake, placing a dock in the lake, and docking boats in the water long-term.  In Docket No. 354908, plaintiffs Richard Gunther, Courtenay Konet, and William E. Marcus, individually, and as trustee of the William E. Marcus Trust (the trust), appeal as of right the trial court's judgment that the record evidence did not suffice to prove by a preponderance of the evidence that the trust owned the disputed 9-foot strip.  Defendants Michael K. Strehl, Casey J. Ambrose, Christy Brown-Ambrose, and Diana Mahacek (defendants) cross-appeal from the same order.  In Docket No. 355248, defendants appeal as of right the same opinion and order, which held that they did not own the 9-foot strip, did not have riparian rights, and had interfered with plaintiffs' reasonable use of their respective riparian rights.  Plaintiffs cross-appeal.

---

[1] This Court consolidated these related appeals to advance the efficient administration of the appellate process.  See *William E Marcus Trust v Chad Apap*, unpublished order of the Court of Appeals entered November 3, 2020 (Docket Nos. 354908; 355248).

[2] As explained in *2000 Baum Family Trust v Babel*, 488 Mich 136, 138 n 1; 793 NW2d 633 (2010):

> As others have done, we observe that strictly speaking, land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral.  However, the term "riparian" is often used to describe both types of land, and will be used in such a manner in this opinion.  [Quotation marks, ellipsis, and citations omitted.]

[3] The parties previously appealed the trial court's summary disposition rulings and this Court affirmed in part, reversed in part, and remanded for further proceedings.  *William E Marcus Trust v Chad Apap*, unpublished per curiam opinion of the Court of Appeals issued October 17, 2017 (Docket No. 333169).

For the reasons stated in this opinion, we affirm the trial court's determinations but remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Lots 23 and 24 are neighboring lakefront properties on Walled Lake. Marcus resides on Lot 23, commonly known as 536 East Walled Lake Drive, Walled Lake, Michigan. Marcus obtained title to Lot 23 by warranty deed in 1996, quitclaimed the property to his trust in 1998, which quitclaimed it back to him in 2003, then in 2008 Marcus again quitclaimed the property to his trust. Each of these deeds' legal descriptions of the land specified that the transferor conveyed Lot 23 except the west nine feet of the property as set forth in the recorded plat. The record title indicates that three previous conveyances were made by Lot 23's owners by warranty deeds that also expressly excepted the west nine feet of the property as set forth in the recorded plat from conveyance to the purchasers. Before 1991, dating back to the 1930s, various deeds' and land contracts' legal descriptions specified that the grantors conveyed Lot 23 except 4½ feet for pedestrian purposes.[4]

The western nine feet of Lot 23 is a strip of land between Lot 23 and Lot 24 (the "9-foot strip"). The 9-foot strip runs from the lakeshore north to East Walled Lake Drive. Gunther and Konet own Lot 24. The record chain of title to their property indicates that they have no legal interest in the 9-foot strip and their predecessors in interest never held such interest.

Strehl owns back lot property commonly known as 523 East Walled Lake Drive (523), and Mahacek owns back lot property commonly known as 515 East Walled Lake Drive (515), both of which are situated on the north side of East Walled Lake Drive. The deeds in the record chains of title to both Strehl's and Mahacek's properties indicate interests in a right-of-way over the west nine feet of Lot 23. Neither of their respective chains of title indicate a conveyance of the 9-foot strip to any of their predecessors in interest. Mahacek's warranty deed by which her immediate predecessor in interest, Chad Apap, conveyed her 515, does not reference in its legal description the 9-foot strip. The 2009 warranty deed conveying 515 to Apap, however, specifies a right-of-way over the west nine feet of Lot 23. Strehl's chain of title to 523 indicates that his predecessors in interest stated in the deeds of conveyance that the conveyed land included a one-half interest in the west nine feet of Lot 23. Strehl's chain of title, however, does not contain any conveyance of any ownership interest in any portion of Lot 23. The chain of title documents in the lower court

---

[4] Lot 23's record title also features a tax deed issued in 1990 related to a 1989 tax sale of the property for unpaid taxes for the 1986 tax year which specified the transfer of "Lot 23 exc W 9 ft, Supervisor's Plat No. 1, City of Walled Lake[.]" A 1966 sale and assignment of a land contract to one of Marcus's predecessors in interest also described the transferred land as "Lot 23 except the West 9 feet thereof, Supervisor's Plat No. 1 . . . ."

record indicate that deeds conveying title to 515 and 523 (formerly identified as Lots 3 and 4 in the recorded plat) reference a right-of-way over the west nine feet of Lot 23.[5]

Strehl and Mahacek use the 9-foot strip to access the lake. A split rail fence runs along each side of the 9-foot strip. Gunther erected the fence on Lot 24's eastern property line to resolve a dispute with back lot property owners.[6] Defendants or their predecessors in interest erected the other fence marking the border of the 9-foot strip on Lot 23. At the lakefront edge of the 9-foot strip, defendants erected a dock where they moored their boats. According to plaintiffs, the dock and defendants' boats extend beyond the 9-foot strip onto water located above the bottomlands in front of both of their properties.

Plaintiffs grew frustrated with defendants' mooring of boats overnight throughout the summer in front of plaintiffs' homes blocking their views of the lake. Consequently, plaintiffs brought suit in 2015 seeking to enjoin defendants from interfering with use of their property and views of the lake, from placing docks and boats that interfered with their riparian rights, from trespassing on their property, and an order that defendants return plaintiffs' property to its previous condition, plus award plaintiffs damages. Defendants moved for summary disposition which the trial court granted prompting plaintiffs to appeal. This Court summarized the grounds on which plaintiffs appealed as follows:

> On appeal, plaintiffs argue that the trial court erred by granting summary disposition to defendants. Plaintiffs maintain that the trial court's determination regarding plaintiffs' lack of ownership in the 9-foot strip was incorrect and, in any event, not dispositive of plaintiffs' claims. Specifically, plaintiffs assert that the trust owns the 9-foot strip as demonstrated by the trust's chain of title. Even if the trust does not own the strip, plaintiffs assert that defendants may not trespass onto neighboring property and they emphasize that defendants' activities extend beyond the strip over bottomlands owned by plaintiffs, implicating plaintiffs' riparian property rights. Additionally, based on these same considerations, plaintiffs argue that amendment to add claims of nuisance and quiet title would not be futile, and thus the trial court abused its discretion by denying plaintiffs' request for leave to amend their complaint under MCR 2.116(I)(5). [*William E Marcus Trust v Chad Apap*, unpublished per curiam opinion of the Court of Appeals issued October 17, 2017 (Docket No. 333169) at 2.]

Respecting the ownership of Lot 23 and the 9-foot strip, this Court concluded from the record evidence as follows:

> The 9-foot strip of land at issue is the western most portion of Lot 23. Gunther and Konet own Lot 24; they have no interest in Lot 23. From the deeds

---

[5] Notably, the record title for Lot 23 neither indicates a lot split at any time severing the 9-foot strip from Lot 23 nor a conveyance of the 9-foot strip to anyone.

[6] The dispute apparently arose in relation to contractors who, in the course of installing siding on Gunther's house, damaged the 9-foot strip with vehicle travel over the land.

contained in the lower court record, it appears that the trust owns Lot 23 except for the 9-foot strip. Specifically, the trust's deed describes the property owned by the trust as: "Lot 23 Exc W 9 ft." Further, the trust obtained the property from Marcus, whose deed described the property he owned at the time of the conveyance to the trust as "LOT 23 EXCEPT THE WEST 9 FEET . . . ." While older deeds in Marcus's chain of title suggest that Marcus's predecessors may have owned all of Lot 23 subject to an easement for the backlot property owners, the fact remains that Marcus and the trust did not receive all of Lot 23. Instead, they received Lot 23 except for the west 9-feet. Such language unambiguously created an exception that excluded the west 9-feet from the conveyance to Marcus, meaning that the 9-foot strip remained with the grantor. See *Thomas v Jewell*, 300 Mich 556, 561; 2 NW2d 501 (1942); *Hasselbring v Koepke*, 263 Mich 466, 479; 248 NW 869 (1933). As a result, based on the documents in the record before us, the ownership of the 9-foot strip appears to rest, not with Marcus or the trust, but with whomever in the trust's chain of title first conveyed Lot 23 except for the 9-foot access. From the available evidence, none of the plaintiffs have shown an ownership interest in the 9-foot strip, and thus they cannot show a trespass resulting from the fence on the 9-foot strip. See *Difronzo* [*v Vill of Port Sanilac*], 166 Mich App [148,] 155[; 419 NW2d 756 (1988)] ("In order to recover for a trespass, plaintiff must have title."). [*Marcus Trust*, unpub op at 6.]

Despite plaintiffs' lack of ownership in the 9-foot strip, this Court observed that "plaintiffs are undoubtedly riparian owners on Walled Lake." *Id*. at 7. This Court noted that defendants claimed ownership to the 9-foot strip with riparian rights, but found that they failed to support their claim, and at best, a question of fact remained in that regard. *Id*. at 8 n 6.[7] This Court stated:

It is thus central to the resolution of this case whether defendants have riparian rights; and, given that plaintiffs have standing to challenge defendants' riparian activities, the trial court erred by resolving this case based on plaintiffs' lack of ownership interest in the 9-foot strip. [*Id*. at 9.]

This Court concluded:

In sum, the trial court properly dismissed plaintiffs' claims relating to the fence. However, with regard to the dock and the boats in the water, plaintiffs' apparent lack of ownership interest in the 9-foot strip of land is not dispositive in this case. Instead, the question is whether defendants' exercise of riparian rights constitutes a trespass or a nuisance given the riparian rights and property undisputedly belonging to plaintiffs. As neighboring riparian owners, whose

---

[7] This Court clarified:

This issue regarding actual ownership of the 9-foot strip has not been addressed by the trial court, and there are gaps in the chains of title, resulting in considerable confusion among the deeds regarding ownership and the size of the strip. We leave it to the trial court to sort out this issue in the first instance. [*Id*. at 8 n 6]

riparian rights are being impacted by defendants' riparian activities, plaintiffs have standing to pursue these claims. The trial court thus erred by granting summary disposition to defendants with respect to plaintiffs' claims for trespass relating to the dock and boats, and they may pursue their requests for injunctive relief. On remand, plaintiffs should be allowed to amend their complaint to add claims for nuisance involving the dock and boats, and they should be allowed to add a claim to quiet title to their riparian property. [*Id*. at 10.]

This Court, therefore, affirmed in part, reversed in part, and remanded for further proceedings.

On remand, the trial court discerned that it had to decide if defendants owned the 9-foot strip and had riparian rights, and whether their exercise of riparian rights constituted a trespass or nuisance in violation of plaintiffs' riparian rights. The trial court, therefore, conducted a bench trial. Following the trial and the parties' submission of posttrial briefs, the trial court ruled that, based on the testimony and evidence, no proof existed that defendants owned the 9-foot strip or had riparian rights. The trial court found that, at most, the deeds in their respective chains of title merely granted them a right-of-way easement over the 9-foot strip of land on Lot 23 but did not grant them riparian rights. Further, the court held that defendants failed to present sufficient evidence to support their claims of adverse possession or acquiescence. The trial court, therefore, entered judgment that: 1) defendants were not entitled to quiet title to the 9-foot strip; 2) plaintiffs were entitled to a permanent injunction preventing defendants from interfering with plaintiffs use of their property and exercise of their riparian rights, and enjoined defendants from placing docks and mooring boats that interfered with plaintiffs' riparian rights; 3) defendants interfered with plaintiffs' riparian rights by placement of a dock extending from the 9-foot strip and mooring boats in front of plaintiffs' properties which trespassed and interfered with plaintiffs' reasonable use of the lake's surface and bottomlands constituting a nuisance but plaintiffs failed to prove entitlement to damages; 4) plaintiffs established that defendants intruded on their land and plaintiffs proved entitlement to quiet title to their bottomlands and a permanent injunction prohibiting defendants from docking their boats in front of plaintiffs' land and above their bottomlands; and 5) plaintiffs failed to establish slander of title. Plaintiffs moved for reconsideration. Defendants moved to alter or amend the judgment. The trial court denied the motions. The parties now appeal.

II. STANDARD OF REVIEW

We review de novo the trial court's determination of all legal and equitable claims in a quiet title action, but review for clear error the trial court's factual findings. *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008). We review de novo questions of law including the propriety of equitable relief under the facts of the case. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). We also review de novo the trial court's interpretation of a deed which is a question of law. *In re Rudell Estate*, 286 Mich App 391, 403; 780 NW2d 884 (2009). These are the same standards applied to review of bench trials. See *Ghaffari v Turner Constr Co*, 473 Mich 16, 19; 699 NW2d 687 (2005) (de novo review of questions of law); *Lignon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007) (clear error review of factual findings). A finding of fact is clearly erroneous if it is unsupported by the record or if, on the entire record, this Court if left with a definite and firm conviction that the trial court made a mistake. *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 31; 896 NW2d 39 (2016).

III. ANALYSIS

Plaintiffs argue that the trial court erred by not quieting title to the 9-foot strip in the trust, albeit subject to an easement. Defendants counter that, because this Court concluded in the previous appeal that the trust owns Lot 23 but not the 9-foot strip, and since no parties other than defendants claimed an interest in the 9-foot strip pursuant to recorded deeds in their chains of title, the trial court erred by failing to quiet title to the 9-foot strip in Mahacek and Strehl. Defendants assert alternatively that they own the 9-foot strip by acquiescence or adverse possession because they had continuous and exclusive possession and use of it. Defendants contend that, as owners of the 9-foot strip, they have riparian rights. Plaintiffs counter that defendants' adverse possession claim fails because they cannot establish the doctrine's hostile possession element since defendants merely hold a right-of-way easement interest in the 9-foot strip for pedestrian purposes which negates their claim. Plaintiffs assert that defendants failed and could not establish acquiescence because plaintiffs have never been mistaken about the ownership of the 9-foot strip and the record chains of title to the parties' respective properties support the trial court's determination that defendants hold a right-of-way easement only, which, as a matter of law, means that they do not have any riparian rights and their installation of a dock and mooring of boats violated plaintiffs' respective riparian rights.

Resolution of the issues raised by the parties required the trial court to determine the ownership of the 9-foot strip. For the reasons explained herein, the trial court correctly decided that defendants do not own the 9-foot strip, and therefore, defendants lack riparian rights and their exercise of riparian rights violated plaintiffs' riparian rights entitling plaintiffs to relief.

Quiet title actions are governed by statute. MCL 600.2932 provides in relevant part:

> (1) Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

> * * *

> (3) If the plaintiff established his title to the lands, the defendant shall be ordered to release to the plaintiff all claims thereto. In an appropriate case the court may issue a writ of possession or restitution to the sheriff or other proper officer of any county in this state in which the premises recovered are situated.

> * * *

> (5) Actions under this section are equitable in nature.

In a quiet title action, the plaintiff bears the burden of proof to establish a prima facie case of title. *Fed Home Loan Mtg Corp v Werme*, 335 Mich App 461, 478; 966 NW2d 729 (2021). "If the plaintiffs make out a prima facie case, the defendants then have the burden of proving superior right or title in themselves." *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999).

The plain language of a deed is the best evidence of the grantor's intent. *Rudell Estate*, 286 Mich App at 409. "As with any instrument, a deed must be read as a whole in order to ascertain the grantor's intent." *Id.* (quotation marks and citation omitted). "The general rule is that the controlling intent is that which is expressed in the instrument, rather than any belief or secret intention of the party or parties which may have existed at the time of execution." *Id.* (quotation marks and citation omitted).

The Marketable Record Title Act (MRTA), MCL 565.101 *et seq*., provides that any person with an unbroken chain of record title for at least 40 years will be considered to have marketable record title free and clear of any and all interest, claims, and charges based in whole or part on events occurring more than 40 years previous. Any claims to the interest based on defects outside the 40-year period are barred unless notice of such claims is filed during the 40-year period. See MCL 565.101; MCL 565.103. A person has "an unbroken chain of title to an interest in land . . . if the official public records disclose" "[a] conveyance or other title transaction not less than [40 years in the past] which . . . purports to create the interest in that person, with nothing appearing of record purporting to divest that person of the purported interest." MCL 565.102(1)(a). A person claiming title to land, therefore, must establish an unbroken chain of title extending back at least 40 years. However, it is well established that a grantor of an interest in land cannot convey a right the grantor does not possess. *Gowdy v Gordon*, 240 Mich 558, 564; 215 NW 702 (1927). The parties to this action, therefore, must establish their claims to title to the 9-foot strip by demonstrating that the grantors of the deeds on which they rely executed valid deeds conveying interests that they actually possessed in the land purportedly being conveyed. If the grantors lacked the interest conveyed, such conveyances were invalid as a matter of law.

As a preliminary matter, the parties dispute whether the law-of-the-case doctrine applies because this Court ruled that Marcus and his trust do not hold an ownership interest in the 9-foot strip. Defendants contend that this Court's decision in that regard means that they own the 9-foot strip. We disagree.

"The law of the case doctrine provides that a ruling by an appellate court with regard to a particular issue binds the appellate court and all lower tribunals with respect to that issue, but only if the facts remain materially the same." *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 110; 888 NW2d 295 (2016) (quotation marks and citation omitted). The rationale of the law-of-the-case doctrine "is the need for finality of judgments and the lack of jurisdiction of an appellate court to modify its judgments except on rehearing." *Id*. at 110-111 (quotation marks and citation omitted). "Under the law of the case doctrine, if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Grievance Administrator v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000) (quotation marks and citation omitted). The law-of-the-case doctrine applies "only to

issues actually decided, either implicitly or explicitly, in the prior appeal." *Id*. at 260 (citations omitted).[8]

At issue here is the interplay of two portions of this Court's *Marcus Trust* opinion: one which states that Marcus and his trust do not hold fee to the 9-foot strip under the unambiguous plain language of their deeds, and one which ordered the trial court on remand to determine the owner of the 9-foot strip. Defendants argue that because this Court ordered the trial court to determine who owns the 9-foot strip and also already held that neither Marcus nor his trust owned it, they must be the owners. A close review of the opinion reveals that this Court determined that the actual ownership of the 9-foot strip had "not been addressed by the trial court, and there are gaps in the chains of title, resulting in considerable confusion among the deeds regarding ownership and the size of the strip." *Marcus Trust*, unpub op at 8 n 6. This Court examined the deeds of conveyance of Lot 23 in the lower court record before it, which dated back to around 1945, and explained:

> From the deeds contained in the lower court record, it appears that the trust owns Lot 23 except for the 9-foot strip. Specifically, the trust's deed describes the property owned by the trust as: "Lot 23 Exc W 9 ft." Further, the trust obtained the property from Marcus, whose deed described the property he owned at the time of the conveyance to the trust as "LOT 23 EXCEPT THE WEST 9 FEET . . . ." While older deeds in Marcus's chain of title suggest that Marcus's predecessors may have owned all of Lot 23 subject to an easement for the backlot property owners, the fact remains that Marcus and the trust did not receive all of Lot 23. Instead, they received Lot 23 except for the west 9-feet. Such language unambiguously created an exception that excluded the west 9-feet from the conveyance to Marcus, meaning that the 9-foot strip remained with the grantor. See *Thomas v Jewell*, 300 Mich 556, 561; 2 NW2d 501 (1942); *Hasselbring v Koepke*, 263 Mich 466, 479; 248 NW 869 (1933). *As a result, based on the documents in the record before us, the ownership of the 9-foot strip appears to rest, not with Marcus or the trust, but with whomever in the trust's chain of title first conveyed Lot 23 except for the 9-foot access. From the available evidence, none of the plaintiffs have shown an ownership interest in the 9-foot strip . . . .* [*Id*. at 6 (emphasis added).]

Examination of the record before this Court in the parties' previous appeal, when compared with the record developed further after remand, indicates that the trial court had more Lot 23 chain of title documentation to analyze than it did in the first instance. The record also indicates that the parties submitted additional documentation respecting defendants' chains of title to their

---

[8] In *Freeman v DEC Int'l, Inc*, 212 Mich App 34, 37; 536 NW2d 815 (1995), this Court explained that the "doctrine is, however, discretionary and merely expresses the practice of courts generally; it is not a limit on their power. Normally, the law of the case applies regardless of the correctness of the prior decision . . . ."

properties.[9] Analysis of the additional chains of title documentation reveals that, although the documentation permits analysis further back in time regarding earlier conveyances, the ultimate relevant facts remain materially the same for determining the ownership of the 9-foot strip. This Court made its previous determination that Marcus and his trust did not own the 9-foot strip based upon a proper analysis of the relevant facts and correct application of the law to those facts. Because the relevant facts are not materially changed respecting Marcus or his trust's interests by the submission of more documentation, we believe that the law-of-the-case doctrine applies regarding the legal question of Marcus and his trust's lack of ownership of the 9-foot strip. Even if the law-of-the-case doctrine does not apply, analysis of the Lot 23 chain of title documentation in the record before us and application of the applicable law leads to the same conclusion.

The record reveals that, around 1946 Anthony and Mae Januzzi conveyed to Rudolph and Elsie Rozek Lot 23 "Excepting the Rights of others in and to the W4½ ft Extending from the Lake shore to sd Highway to be used for Pedestrian Purposes: Above property now described as Supervisor's Plat 1 Lot 23."[10] In 1972, Rudolph Rozek conveyed Lot 23 to Henrietta Eshkanian by warranty deed without reference to any excepted portion of the property but stated that the "deed is given pursuant to the terms of a certain land contract between the parties hereto dated August 22, 1959 . . . ."[11] Eshkanian, however, had been a party to earlier land contracts that described the conveyed land as Lot 23 except the west nine feet.[12] Eshkanian conveyed Lot 23 except the west nine feet to Freeman and Elvera Hensley in 1991. In 1992, the Hensleys sold by land contract to Thomas and Eleanore Parsons Lot 23 except the west nine feet thereof. The

---

[9] Defendants claim that plaintiffs presented the "full chain of title" earlier which resulted in summary disposition and the previous appeal. The record, however, reflects that on remand plaintiffs attached additional deeds to their amended complaint and the parties expanded the trial court record respecting the chains of title for Lot 23 and defendants' properties.

[10] The deed conveying Lot 23 to the Januzzis featured the same exception for pedestrian purposes. The chains of title for Lot 23 and defendants' properties reveal that Joseph and Julia McLean held title to all of these properties dating back to around 1919. The McLeans granted mortgages on Lot 23 but during the height of the Great Depression lost the property. Harvey and Sarah Spencer took title by sheriff's deed and a quitclaim deed and later conveyed the property to the Januzzis. The conveyances to the Spencers specified that the west 4½ feet extending from the lakeshore to the highway "shall be used for pedestrian purposes by parties owning the back lots formerly owned by [the Mcleans]." The Spencers conveyed the property to the Januzzis with the 4½-foot exception for pedestrian purposes.

[11] In 1959, the Rozeks entered into a land contract for Lot 23 with Sam and Henrietta Eshkanian. The record does not contain a copy of that land contract. In 1966, the Eshkanians assigned the land contract for Lot 23 to Thomas and Marian Campbell and described the real property as "Lot 23 except the West 9 feet thereof." The Campbells assigned their land contract to Freeman and Elvera Hensley in 1967 and the assignment described the land as "Lot 23 except the west 9' thereof."

[12] Earlier recorded assignments of land contracts pertaining to Lot 23 executed in 1966 and 1967 described the conveyed land as Lot 23 except the west nine feet thereof. A tax deed issued in 1990 to the purchaser at the tax sale similarly described the property as Lot 23 except the west nine feet.

Parsons sold by land contract to Paul Gobielle and Eric Tomkow Lot 23 except the west nine feet. In 1996, the Hensleys conveyed by warranty deed to the Parsons Lot 23 except the west nine feet. On the same day, the Parsons conveyed by warranty deed to Gobielle and Tomkow Lot 23 except the west nine feet, and Gobielle, his wife, and Tomkow conveyed by warranty deed to Marcus Lot 23 except the west nine feet. As explained previously, Marcus quitclaim deeded the property to his trust in 1998, his trust quitclaim deeded the property back to Marcus in 2003, and Marcus again quitclaim deeded the property to his trust in 2008. Each of those conveyances described the property as Lot 23 except the west nine feet.

Michigan law establishes the extent of Marcus and his trust's ownership interest. In *Peck v McClelland*, 247 Mich 369, 371; 225 NW 514 (1929), our Supreme Court explained that where a grantor excludes a portion of property by exception, title to such property remains in the grantor. The Court clarified that:

> If the grantor, no matter what the words may be, retains in himself title to a part of the land described in the deed, it is an exception. In such case words of inheritance are not necessary to retain in him the title for himself and his heirs. This is reasonable, because the deed did not purport to convey the title to the part excepted, nor to devest him of it. Whatever is excluded from the grant by exception remains in the grantor as of his former title or right.

> By the deeds here involved, there is an exception of the 14-foot strip. It is not conveyed by the grantor to the grantee in any deed. A right of way over this 14-foot strip was given by the grantor to the grantee, but the fee was retained by the grantor.

> A grantor who states in his deed that he excepts a certain portion of the land because he wants it for a certain purpose cannot be held to have conveyed that which he has expressly excluded because he afterwards devotes it to a different purpose.

> If this 14-foot strip was excepted from the deeds of McClelland, the title thereto remained in him, and, upon his death, passed to his heirs, subject to the easement. [*Id*. (quotation marks and citations omitted).]

Similarly, in *Jewell*, 300 Mich at 557, our Supreme Court held that a deed conveying land "except 10 rods square lying in the northeast corner," expressly and unambiguously excepted that portion of the property from the conveyance resulting in the grantor's retention of title to that land. Likewise, in *Hasselbring*, 263 Mich at 479, our Supreme Court held that the grantor retained title to a strip of land because the conveyance excluded it by exception. Applying the principle articulated in *Peck*, *Jewell*, and *Hasselbring* to this case, title to the 9-foot strip remained in Eshkanian because Eshkanian conveyed Lot 23 except the west 9-foot strip, and every conveyance thereafter up to and including the ultimate conveyance to Marcus's trust excluded by exception the 9-foot strip from the grant of title. Accordingly, neither Marcus nor his trust holds title to the

9-foot strip.[13] Therefore, the trial court did not err by *not* quieting title to the 9-foot strip in Marcus or his trust.

That neither Marcus nor his trust holds title to the 9-foot strip, pursuant to the language in their respective deeds and the chain of title for Lot 23, however, does not result in defendants' ownership of the 9-foot strip. The determination of defendants' respective rights, if any, in the 9-foot strip must be derived from the language of the conveyances recorded in their respective properties' chains of title. In this case, the record reflects that defendants do not own the 9-foot strip. Defendants' chains of title reveal that, at most, they share a right-of-way easement over the western nine feet of Lot 23. Lot 23's chain of title indicates that during the 1930s for the first-time grantors included in conveyances to grantees that they conveyed Lot 23 except 4½ feet for pedestrian purposes. Later, the various recorded deeds and land contracts excepted the 9-foot strip on the western side of Lot 23. The chains of title to defendants' respective properties indicate that grantors specified in the legal descriptions of the property being conveyed to grantees that the grantees had a right-of-way over the western nine feet of Lot 23. Michigan law is clear that "a deed *granting* a right-of-way typically conveys an easement." *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 371; 699 NW2d 272 (2005), citing *Quinn v Pere Marquette R Co*, 256 Mich 143; 239 NW 376 (1931). Where a deed conveys "only a right-of-way[, t]he plain language of the deed, as well as the rule of construction articulated in *Quinn*, [] indicate that the deed conveyed an easement rather than a fee simple." *Id*. The right-of-way over the 9-foot strip, therefore, is an easement and not an ownership interest.

No conveyance in Lot 23's chain of title specified the transfer of ownership of any portion of Lot 23 to defendants' predecessors in interest. Moreover, Lot 23's chain of title does not feature a lot split severing the 9-foot strip from Lot 23. That Strehl's chain of title features conveyances that describe his land plus an undivided one-half interest in the west nine feet of Lot 23, however, is not dispositive, because a grantor may only transfer or convey to a grantee that which the grantor holds and nothing more. *Gowdy*, 240 Mich at 564; *Eastbrook Homes, Inc v Dep't of Treasury*, 296 Mich App 336, 349; 820 NW2d 242 (2012). Accordingly, the emergence of language in deeds of conveyance purporting to grant an undivided one-half interest in the west nine feet of Lot 23 lacks validity because the chain of title reveals that the grantors who inserted such language in their deeds of conveyance never held such ownership interest and could not legitimately convey such property. The continued inclusion of the purported interest in the chain of title thereafter had no effect because the predecessor grantors never held such an interest that they could convey.

---

[13] The trial court permitted the parties by publication to alternatively serve process on and give notice of the pending action to unknown heirs, unknown owners, unknown devisees, legatees, or assignees who might have an interest in the disputed western 9-foot strip of Lot 23, of the trial court's order and informing such persons that failure to answer would result in default judgment. The record reflects that the Oakland County Legal News published the notice on July 31, 2018, August 7, 2018, and August 14, 2018. Following publication, plaintiffs sought entry of a default against such persons and the court clerk entered a default on January 15, 2015, against such unknown parties for failure to plead or otherwise defend. The record does not reflect that the trial court entered a default judgment against the defaulted parties.

Because Strehl's and Mahacek's predecessors in interest lacked ownership interest in the 9-foot strip, they merely held a right-of-way easement over the west nine feet of Lot 23. The extent of a party's rights under an easement is generally a question of fact. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). However, the existence of an easement is a question of law, and the nature of an easement derived from an instrument is also a question of law. *Minerva Partners, Ltd v First Passage, LLC*, 274 Mich App 207, 218; 731 NW2d 472 (2007); see also *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). The plain and unambiguous language of the easement as described in the parties' chains of title nowhere grant defendants' predecessors in interest any riparian rights. Further, the language of the easement never granted them any right to install and use a dock or to moor a boat at the end of the easement. Such conduct is plainly not within the scope of the easement. The easement permits use of the 9-foot strip to access the lake, but nothing more. The easement was created for access or ingress and egress to the lake and cannot be expanded. *Dyball v Lennox*, 260 Mich App 698, 708-709; 680 NW2d 522 (2004). "[A]ccess includes 'a right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming,' and a right to temporarily anchor boats." *Id*. at 709 n 4, quoting *Thies v Howland*, 424 Mich 282, 288; 380 NW2d 463 (1985). Defendants, as a matter of law, hold no riparian rights, and the trial court, therefore, did not err by ruling that defendants were not entitled to quiet title in themselves in the 9-foot strip or exercise any riparian rights.

Nor may defendants claim title to the 9-foot strip by adverse possession or acquiescence. Defendants' predecessors in interest held a right-of-way easement for pedestrian use of the 9-foot strip. The extent of a party's rights under an easement is generally a question of fact. *Blackhawk*, 473 Mich at 40. However, the existence of an easement is a question of law, and the nature of an easement derived from an instrument is also a question of law. *Minerva Partners*, 274 Mich App at 218; see also *Little*, 468 Mich at 700. "A person entitled to the use of an easement cannot materially increase the burden upon the servient estate beyond what was originally contemplated." *Thies*, 424 Mich at 297.

"To establish adverse possession, the claimant must show that its possession is actual, visible, open, notorious, exclusive, hostile, under cover of claim or right, and continuous and uninterrupted for the statutory period of fifteen years." *West Mich Dock & Market Corp v Lakeland Investments*, 210 Mich App 505, 511; 534 NW2d 212 (1995); MCL 600.5801(4). The party claiming title must prove adverse possession with clear and cogent evidence. See *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001). "Peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession, no matter how long maintained. Hostility is the very essence of adverse possession." *King v Battle Creek Box Co*, 235 Mich 24, 35; 209 NW 133 (1926). In this case, defendants cannot establish a continuous period of 15 years of hostile possession and use. Casey and Christie Ambrose purchased 515 in 1998, and their deed only granted them a right-of-way easement over the 9-foot strip. They sold the property in 2007 to a couple who conveyed the property to Chad Apap, Mahacek's predecessor in interest. Casey Ambrose testified that he mowed the strip, put up a fence on the eastern side of the 9-foot strip in 2005, and reinstalled a fence on the Lot 24 property line in 2006. The record indicates that such use was permitted as consistent with the right-of-way easement and not objected to by the owner of Lot 23. Respecting 523, evidence indicates that Keith LaPointe, who took ownership 1988, had a row boat that he pulled to and from the lake but he did not have a dock or leave his boat on the land. LaPointe or his trust owned 523 until sold to the Ambroses in 2014 who deeded that same year to Strehl. Defendants' and their predecessors'

placement and use of a dock at the end of the 9-foot strip was not consistent with an easement for access to the water. However, even accepting those actions as hostile and not permissive, defendants failed to establish a continuous 15-year period of hostile use of the 9-foot strip. Gunther testified that no dock attached to the 9-foot strip existed at any time during the summer of 2005. He provided a picture that he and Konet took of Lot 24 before they purchased it which revealed no dock at the end of the 9-foot strip. Gunther further testified that he did not see a dock at the end of the 9-foot strip until 2007, after Daniel Crane had purchased 515 from the Ambroses.[14]

Moreover, Crane asked Gunther whether he could put in a dock with a jet ski, and Gunther agreed because Gunther did not yet have a dock. Gunther and Crane shared that dock. Gunther and Crane also met with Marcus who did not have a problem with Crane using the 9-foot strip or putting a dock in at the end of it. This evidence establishes that Gunther and Marcus permitted the dock which permissive use disrupted the continuity of the statutory 15-year period negating any claims of adverse possession. Scot Drahuse testified that when he rented 515 from Apap, from February 2012 until October 2016, he did not see a dock placed at the end of the 9-foot strip at any time until 2016. The dock Drahuse saw in 2016 was put in by Strehl. The record clearly established that periods of nonuse and permissive use prevented the owners of either 515 or 523 from adversely possessing the 9-foot strip.

Likewise, defendants' argument that they acquired title to the 9-foot strip through acquiescence fails.

The doctrine of acquiescence operates under the principle that a boundary line that has been accepted by the parties should stand. *Walters v Snyder*, 239 Mich App 453, 457-458; 608 NW2d 97 (2000). There are three forms of acquiescence: "(1) acquiescence for the statutory period, (2) acquiescence following a dispute and agreement, and (3) acquiescence arising from intention to deed to a marked boundary." *Id.* at 456-457. Defendants concede that the only form of acquiescence at issue here is acquiescence for the statutory period. As described by this Court in *Kipka v Fountain*, 198 Mich App 435, 438-439; 499 NW2d 363 (1993), this form of acquiescence

> is concerned with a specific application of the statute of limitations to cases of adjoining property owners who are mistaken about where the line between their property is. Adjoining property owners may treat a boundary line, typically a fence, as the property line. If the boundary line is not the recorded property line, this results in one property owner possessing what is actually the other property owner's land. Regardless of the innocent nature of this mistake, the property owner whose land is being possessed by another would have a cause of action against the other property owner to recover possession of the land. After fifteen years, the period for bringing an action would expire. The result is that the property owner of record

---

[14] Patricia Taylor testified that lived she at 515 from her birth in 1966 until 1999 when her parents sold 515 to the Ambroses and that either her parents or grandparents placed a dock at the end of the 9-foot strip at different times over the years, but her testimony does not establish a continuous 15-year period of dock placement or usage.

would no longer be able to enforce his title, and the other property owner would have title by virtue of his possession of the land.

Although the specific elements necessary to establish such a claim have not been expressly delineated, decisions have generally "merely inquired whether the evidence presented establishes that the parties treated a particular boundary line as the property line." *Walters*, 239 Mich App at 458.

The problem for defendants under this theory is that they are not adjoining property owners with a dispute over a boundary line. This Court has consistently held that the theory of acquiescence is not applicable when the "case does not involve adjoining property owners or abutting lots." *Wamsley v Cheboygan Co Rd Comm*, unpublished per curiam opinion of the Court of Appeals, issued July 16, 2013 (Docket No. 309802), p 4.[15] Further, it has done so in a case with remarkably similar facts to the instant case. In *Pollack v Fraser*, unpublished per curiam opinion of the Court of Appeals, issued May 30, 2017 (Docket No. 330540), pp 1-2, this Court considered ownership of a 10-foot strip on which various back lot owners had erected a dock. The defendants were the property owners on each side of the 10-foot strip. *Id.* at 2. This Court held that the trial court properly denied the plaintiff back lot owners the opportunity to amend their complaint to include a claim of acquiescence because the case "has never suggested a concern or dispute pertaining to a boundary line." *Id.* at 9. Although these cases are not binding authority, MCR 7.215(C)(1), in light of the factual similarity to *Pollack*, we find *Pollack* persuasive and conclude that defendants cannot establish ownership of the 9-foot strip by acquiescence.

Defendants also argue that they must be deemed owners of the 9-foot strip by color of deed. We disagree.

An owner of real property may lose title to some or all of the property through an assertion of ownership under color of deed. *Adams v Adams* (*On Reconsideration*), 276 Mich App 704, 719-720; 742 NW2d 399 (2007). Defendants claim that Marcus received notice of their adverse deeds in three different ways: (1) defendants' deeds were recorded, providing constructive notice, (2) the fence gave actual notice of the use of the 9-foot strip, and (3) the language excepting the 9-foot strip in Marcus's own deed. Each of these claims of notice is insufficient to establish ownership under color of deed.

"In cases in which the adverse claimant claims title under color of deed, disseisin occurs when the record owner first receives notice of the adverse deed. Notably, recordation of an adverse deed is *only* notice to parties *other* than the record landowner." *Jonkers*, 278 Mich App at 271-272 (quotation marks and citations omitted, alteration in original). Defendants' claim that the existence of the fence on the 9-foot strip gave actual notice of the adverse deed lacks merit. The fence's existence and placement were consistent with the existence of the easement Marcus

---

[15] Unpublished opinions of the Court of Appeals are not binding upon this Court, but may be considered for their persuasive value. *Paris Meadows LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010); MCR 7.215(C)(1).

conceded existed on the 9-foot strip. Therefore, it could not and did not provide any notice—actual or constructive—that someone claimed an ownership interest in the 9-foot strip.

Defendants note that the undivided half ownership interest in the 9-foot strip has appeared in the 523 chain of title since 1988, while Marcus did not obtain Lot 23 until 1996. Defendants contend that, because Michigan is a race-notice state, see MCL 565.29; *Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006), and their deeds were recorded first, their deeds provided the necessary notice to Marcus. Defendants also argue that Marcus was on notice that he might not own the 9-foot strip because of the inclusion of the language "except west 9 feet" in his chain of title. Both of these claims fail for the same reason—no evidence in the Lot 23 chain of title provides any notice of defendants' ownership interest in, or claims to, title in the 9-foot strip.

Lot 23's chain of title indicates that there has been no conveyance, lot split, or separate tax ID number created for the 9-foot strip signifying its severance from Lot 23 as platted. For a deed to provide the notice presumed by the race-notice statute, the deed must show up in the chain of title for the property being purchased. In this case, the purported undivided one-half interest in the 9-foot strip *only* shows up in the chain of title to 523. Absolutely nothing ties the recording of that purported interest to the chain of title to Lot 23. A document recorded outside the chain of title cannot affect the interest of a person with a recorded interest within the chain of title to property. *Bristol v Braidwood*, 28 Mich 191, 193 (1873). Marcus and his trust are persons within the Lot 23 chain of title. Strehl's interest located outside the Lot 23 chain of title cannot affect any ownership interest holder within the Lot 23 chain of title. *Id*.

Strehl's deed and other deeds within 523's chain of title provided no notice to Marcus or the trust. The 9-foot-strip exception in Marcus and his trust's Lot 23 deeds, as previously explained, merely gave notice that a predecessor in interest retained ownership and did not convey the 9-foot strip. Anyone investigating ownership of Lot 23 would see the exception in the deed and look back in Lot 23's chain of title to determine what interest was excepted, when, and by whom. The fact that no conveyance in the Lot 23 chain of title shows that the 9-foot strip was split off or expressly deeded in fee to someone else, and only references an easement for pedestrian use, establishes that defendants' predecessors lacked ownership in the 9-foot strip and could not convey any ownership interest to that land. The deeds that purported to show ownership in anyone outside the Lot 23 chain of title only appear in 523's chain of title. The grantors in 523's chain of title did not hold any ownership interest in the 9-foot strip that they could legitimately convey. *Gowdy*, 240 Mich at 564. Therefore, title holders to Lot 23 cannot be deemed to have notice of an adverse interest in the 9-foot strip. Because nothing ties the recording of the purported interest in the 9-foot strip to the Lot 23 chain of title, its recording outside of the chain of title prevents it from affecting the interest of Marcus or the trust. Therefore, neither the purported interest contained in the deeds for 523 nor the exceptions contained in Marcus's and his trust's deeds provided any notice to Marcus or his trust, and defendants' claim of ownership under color of deed fails as a matter of law.

"The use of an easement must be confined strictly to the purposes for which it was granted or reserved." *Delaney v Pond*, 350 Mich 685, 687; 86 NW2d 816 (1957). In this case, regardless of the multiple different phrases used in various deeds over time, the deeds only ever granted a right-of-way easement for pedestrian purposes over the 9-foot strip. An easement does not give

-16-

rise to riparian rights unless the grant of easement or right-of-way specifically indicates the grantor's intent to grant a specific riparian right. *Thies*, 424 Mich at 294-295; see also *Thompson v Enz*, 379 Mich 667, 685; 154 NW2d 473 (1967). There being no references in any of the deeds that grant a specific riparian right, or even riparian rights generally, the trial court properly concluded that defendants had no riparian rights.

Defendants having no ownership interest in the 9-foot strip and no riparian rights by way of their easement, their undisputed actions in placing a dock and docking boats at the end of the 9-foot strip and in front Lot 24 necessarily interfered with plaintiffs' riparian rights, plaintiffs being the only property owners who as a matter of law hold riparian rights in that area of Walled Lake.

The question remains whether the trial court could and should have quieted title to the 9-foot strip in the trust. This Court previously concluded that ownership of the 9-foot strip appeared to reside with someone other than any of the parties. The record now reveals that Eshkanian, if alive, or her heirs, assigns, or legatees, technically hold the retained ownership interest in the 9-foot strip. The record, however, also reveals that plaintiffs gave proper notice of the quiet title action and no interested party answered or appeared to defend the action to establish superior title to the property. The clerk, therefore, properly entered a default against all nonparties to the action who could claim an interest in the 9-foot strip, which included Eshkanian, if alive, and her heirs, assigns, and legatees.

The record also indicates that no nonparties subject to the default have moved to set aside the default against them. Accordingly, plaintiffs are entitled to move for and obtain entry of a default judgment against all such persons. Plaintiffs have not done so and the trial court has not entered a default judgment against the defaulted persons. If plaintiffs were to move for entry of such a default judgment and the trial court granted such motion, the trial court could quiet title to the 9-foot strip in Marcus's trust, there being no holder of superior title to Lot 23. Moreover, the fact that the 9-foot strip has never been split or severed from Lot 23 itself, that portion of the land remains part of Lot 23 fee, and the trial court may quiet title to entirety of Lot 23 by awarding Marcus's trust the fee simple interest subject to the right-of-way easement over the western 9-foot strip of Lot 23.

We affirm the trial court's judgment and remand for further proceedings regarding quieting title consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ James Robert Redford
/s/ Michelle M. Rick

-17-